FILED

AUG 31 2012

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA
ERIE OFFICE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

GARY LARSON,     :  Case No. 11-11925-TPA
    *Debtor*     :  Chapter 7
                                                    :  Related to Doc No. 38

## MEMORANDUM OPINION

On August 13, 2012, a continued evidentiary hearing was held on the Debtor's *Motion to Reopen Chapter 7*, Document No. 38 ("Motion to Reopen"), which included an attachment he titled "Notice of Rescission" pertaining to a *Reaffirmation Agreement* the Debtor had previously filed seeking to reaffirm the debt on a 2004 Jeep Liberty. At the time of filing, the Court considered the Debtor's "Notice" as a *Motion to Rescind* his Reaffirmation Agreement.[1] A prior evidentiary hearing in this matter was held on June 21, 2012.

The Court scheduled the continued evidentiary hearing because following the June 21st hearing the Court was left with the impression that the Debtor was, at all times, current on his payments to AmeriCredit Financial Services, Inc. or its successor ("AmeriCredit"), pursuant to the original credit agreement and Reaffirmation Agreement. However, a subsequent review of the digital audio transcript from the hearing reflected that the information pertaining to the specific payments made by the Debtor was not clear from the record. The Order scheduling the August 13th hearing required the Debtor to produce the original credit agreement, i.e., vehicle loan or financing documents which, according to the Reaffirmation Agreement, is believed to be

---

[1] The Court has jurisdiction over this matter pursuant to *28 U.S.C. §1334*. These are core matters pursuant to *28 U.S.C. §§157(b)(2)(A), (I)* and *(O)*. This *Memorandum Opinion* constitutes the Court's findings of fact and conclusion of law pursuant to *Fed.R.Bankr.P. 7052*.

1

the relevant credit agreement, and any supplements to that controlling document setting forth the terms of the financial agreement between the Parties. Additionally, the Debtor was required to produce any and all documents related to the subject vehicle's repossession, sale and any deficiency notices. Following the Debtor's uncontroverted testimony at both hearings, the Court will grant both the *Motion to Reopen* and the *Motion to Rescind* for the reasons that follow, but first preceded by the pertinent factual and procedural history of the matter.

On November 30, 2011, the Debtor, acting *pro se*, filed a *Chapter 7 Voluntary Petition*. On January 9, 2012, the Debtor filed a *Reaffirmation Agreement*, Document No. 23 ("Reaffirmation Agreement"). At the time the Reaffirmation Agreement was filed, the total debt to be reaffirmed was in the amount of $8,690.90. Pursuant to the terms of the Reaffirmation Agreement, the reaffirmed debt was to be repaid over 30 months at a rate of $331.77 per month with a fixed interest rate of 17.25%. Because the Debtor was acting *pro se*, the Court scheduled a hearing on the matter for February 9, 2012. *See 11 U.S.C. §524(c)(6)*.

The Debtor appeared *pro se* at the February 9, 2012, hearing; no one appeared on behalf of AmeriCredit. At the hearing, the Debtor responded affirmatively to questions posed by the Court, *inter alia*, questions involving the Debtor's willingness to enter into the Reaffirmation Agreement with AmeriCredit. Following this colloquy, the Court entered a Bench Order indicating that, based upon the responses from the Debtor, the *Reaffirmation Agreement* was in the best interest of the Debtor and therefore approved. In issuing the Bench Order the Court not only assumed the Debtor understood his obligation under the Reaffirmation Agreement but that AmeriCredit would similarly comply with its duties and responsibilities under the Agreement. On March 13, 2012 the *Order Discharging Debtor* and *Final Decree* were signed and entered. On the same date, the Debtor's case was closed.

The next interaction between the Debtor and this Court occurred approximately two weeks later and involved a letter sent by the Debtor requesting rescission of his Reaffirmation Agreement. The March 27th letter was received by the Court on April 2, 2012. In response to the Debtor's letter, the Court issued an Order dated April 10, 2012 (Document No. 35) stating that the Court would not consider the Debtor's request to rescind the Reaffirmation Agreement unless, on or before April 24, 2012, the Debtor filed an appropriate motion to reopen along with the required filing fee. On April 16, 2012, after paying the filing fee, the Debtor filed the instant *Motion to Reopen* along with his *Motion to Rescind*.

The Court's *April 23rd Order* originally set a hearing on the *Motion to Reopen* for May 31st at 11:00 A.M. with responses due by May 24th. Thereafter, by Order dated May 30, 2012, the May 31st hearing was cancelled. In its stead, an evidentiary hearing was set on the *Motion to Reopen* and the *Motion to Rescind* for June 21, 2012, with a response deadline of June 18, 2012. Finally, as stated *supra*, the Court held the continued evidentiary hearing on August 13, 2012.[2] By virtue of the "triple effect" of the April 23rd, May 30th and July 31st Orders, if AmeriCredit ever desired to respond and/or appear, it was given ample opportunity to do so over an aggregate period approaching four months. Despite this extensive time, and receiving three notices regarding the scheduling of evidentiary hearings in this matter, no responses were filed by AmeriCredit or any successor entity, nor did it appear at any hearing.

---

[2]    The Reaffirmation Agreement, Doc. No. 23, is an agreement between the Debtor and AmeriCredit which was executed by the Debtor and a representative of AmeriCredit. Furthermore, the Reaffirmation Agreement was filed by Donna Seymour, a Bankruptcy Specialist for AmeriCredit having a mailing address of PO Box 183853, Arlington, Texas 76096. All notices in this matter have been sent to AmeriCredit as the party of record regarding the Reaffirmation Agreement. At the hearing the Debtor testified that he received a Deficiency Calculation Notice from "GM Financial" having a mailing address of P.O. Box 182963, Arlington, Texas 76096. No notice has been filed in this matter suggesting any party other than AmeriCredit should receive notice concerning the debt in question. Nevertheless, the Court specifically provided notice of the August 13, 2012 hearing to both AmeriCredit and GM Financial. The Court is satisfied that appropriate notice has occurred regarding this matter.

3

At the June 21st and August 13th hearings, in addition to the Debtor, the Debtor's wife, Sandra Larson, was in attendance. After being sworn, the Debtor testified, in response to questioning from the Court, that "immediately" after he received notice of his discharge he was contacted by AmeriCredit regarding the 2004 Jeep Liberty at which time he was informed that he was three payments in arrears. *Audio Transcript of Proceedings* dated June 21, 2012, 11:36:57 to 11:37:02. According to the Debtor, AmeriCredit claimed the arrears then totaled approximately $900, which roughly equaled 3 monthly payments under the Reaffirmation Agreement. The Debtor then testified that when he informed AmeriCredit a reaffirmation agreement was in place, AmeriCredit denied the existence of any such agreement and demanded "immediate and full payment" of the $900. *Id.* at 11:35:06 to 11:35:15.

The Debtor further testified that, before he had the opportunity to obtain the funds and pay the required arrearages, AmeriCredit repossessed his vehicle. *Id* at 11:39:10 to 11:39:23. Next, the Debtor testified that two days after the vehicle was repossessed he contacted AmeriCredit in an attempt to cure the amounts due in order to obtain return of the vehicle. *Id.* at 11:39:28 to 11:42:00. AmeriCredit agreed to this approach so long as the Debtor cured the past due arrears as well as the cost of repossession. *Id.* The Debtor was told he needed $1500 to cure the entire deficiency in order to obtain the return of his vehicle. *Id.* The Debtor, and his wife, testified that they borrowed the money from the Debtor's mother and were immediately ready, willing and able to cure the entire amount due. *Id.* The Debtor testified that he made numerous calls to AmeriCredit in an attempt to arrange for cure of the default in order to effect the return of the vehicle. *Id.* At this point the Debtor was told that approval had to come from "upper management" and until that time, no cure would be authorized. *Id.* Finally, the Debtor testified

4

that AmeriCredit informed him "the deal was off" since the vehicle was sold at auction and therefore, he would be responsible for any deficiency.[3] *Id.*

During questioning from the Court regarding the status of his obligation at the time the Reaffirmation Agreement was filed, the Debtor affirmatively stated "I wasn't behind, I was caught up." *Id.* at 11:34:25 to 11:34:28. The Reaffirmation Agreement itself identifies the amount of debt due on the date the bankruptcy was filed as $8,994 and the amount of debt to be reaffirmed as $8,690.98. The Reaffirmation Agreement includes all fees and costs that had accrued as of the date of the "disclosure," which the Reaffirmation Agreement identified as November 30, 2011. The Reaffirmation Agreement describes the Debtor's repayment obligation as a monthly installment of $331.77 commencing on December 25, 2011 and continuing on the same day of each succeeding month. The Debtor signed the Reaffirmation Agreement on December 26, 2011. A representative of AmeriCredit signed the Reaffirmation Agreement on January 4, 2011, and the document was filed with the Court on January 9, 2011.

Upon continued questioning during the June 21st hearing the Debtor reiterated that he was "current" at the time the Reaffirmation Agreement was executed. *Id.* at 11:34:39 to 11:34:57. Accepting the uncontroverted testimony of the Debtor as true, he was therefore current on his obligation as of January 4, 2011. Since the Debtor's payments were not due until the 25th of each month, at the time AmeriCredit repossessed the vehicle the Debtor could not have been three months in arrears. At most, the Debtor could only have been two payments behind, January and February, 2012. The discharge was entered, March 13, 2012, and the

---

[3] After being informed the vehicle had been sold at an auction, the Debtor immediately contacted the Court regarding his intent to rescind the Reaffirmation Agreement. However, the Deficiency Calculation Notice the Debtor received, and presented to the Court at the time of the hearing (marked as Courtroom Exhibit "A" and filed of record), states that the vehicle was not sold at auction until April 26, 2012, approximately one month after the Debtor's initial letter to the Court.

Debtor testified that AmeriCredit contacted him immediately after the discharge was entered. Since the March payment was not due until the 25th the Debtor could not yet have missed that payment when he was first contacted by AmeriCredit.

At the August 13th continued evidentiary hearing the Debtor's testimony did not change upon additional questioning from the Court. The consistency of the responses given by the Debtor to the Court's questions further supported the Debtor's position. As required, the Debtor did produce records pertaining to the purchase of the vehicle as well as a "Notice of Right to Redeem" from GM Financial and a "notice" regarding GM Financials' plan to sell the vehicle. These documents were marked as Courtroom Exhibit "B" and made part of the record.

Also at the August 13th hearing, the Court made specific inquires as to the nature of any payments the Debtor made pursuant to the Reaffirmation Agreement. The Debtor was emphatic and unwavering in his response that he was currant on his vehicle payments prior to the execution of the Reaffirmation Agreement. The Debtor stated that he stopped receiving bills from AmeriCredit for the vehicle payment because, it was the Debtor's understanding, that AmeriCredit "cannot collect money" while he was in bankruptcy. *Audio Transcript of Proceedings* dated August 13, 2012, 11:32:06 to 11:32:10. Upon additional questioning by the Court the Debtor reiterated that he did not make any payments on the vehicle after the Reaffirmation Agreement was executed because he did not receive any bill or other notification indicating that he should submit a payment as he had expected to receive. *Id.* at 11:35:38 to 11:35:42. Creating added confusion to the Debtor as to when and how the Debtor was to submit payments to AmeriCredit pursuant to the Reaffirmation Agreement, the Debtor's wife testified that she attempted to view the vehicle payment account details online but was unable to do so. Mrs. Larson stated that when she tried to access the payment information online a "banner" at

the top of the webpage notified her that AmeriCredit was aware of the bankruptcy and no information was available online. *Id.* at 11:38:40 to 11:38:59. Thus, at least based on the Debtor's understanding, he was not to make payments pursuant to the Reaffirmation Agreement until contacted by AmeriCredit. The record is clear that, up to the time of the repossession, the information provided to the Debtor by AmeriCredit left him without any indication of when, where or how payment should be submitted.[4] The Debtor's testimony is this regard was creditable and compelling.

As noted, AmeriCredit has never appeared in this matter. The testimony of the Debtor however reflects that the actions on the part of AmeriCredit outside of court were swift, severe, unfair and apparently without regard to the terms of the Reaffirmation Agreement. The timeframe between the Debtor receiving his discharge (March 13, 2012), and his initial letter to the Court seeking to rescind the Reaffirmation Agreement (March 27, 2012), constituted a mere 14 days. Therefore, the interaction between the Debtor and Creditor culminating in the repossession was less than 14 days.

"A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *11 U.S.C.A. § 350(b).* "[T]he

---

[4] The Reaffirmation Agreement states that monthly installments of $331.77 were due commencing on December 25, 2011, and continuing on the same day of each succeeding month. Also, unless otherwise changed in the agreement, all other terms and conditions of the "original credit agreement" were reaffirmed. One would normally believe that the applicable credit agreement would typically include where and how to make payments and what would occur in the event of default. Unfortunately for AmeriCredit, the only "credit agreement" in the current record is Courtroom Exhibit "B" which includes documents evidencing a creditor relationship between AmeriCredit and the Debtor but does not include any reference to the method, manner or place where payment is to be made or the manner of penalty for failure to make proper and timely payment. The current record is devoid of such details even though AmeriCredit was given ample opportunity to present the same at the various hearings. Along with everything else pertaining to this proceeding, for some reason, AmeriCredit has decided to completely ignore the opportunity given it by the Court to produce any information that might be viewed as favorable to its position. Based on the foregoing, the record is clear that, at worst, the Debtor had a good faith, but possibly mistaken belief, i.e., that no payments were to be made by him until contacted by AmeriCredit following his discharge from bankruptcy, a belief that at least partially was caused by AmeriCredit's conduct.

Bankruptcy Code contemplates reopening closed cases on a liberal basis." *In re Countrywide Home Loans*, Inc., 384 B.R. 373, 390 (Bankr. W.D. Pa. 2008). The Debtor in the instant case has filed a proper motion to reopen, along with the required filing fee. "[T]he reopening of a case is merely a ministerial or mechanical act which allows the court file to be retrieved ... to enable the court to receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of any requested order." *In re Haralambous*, 257 B.R. 697, 698 (Bankr. D. Conn. 2001). Thus, for the foregoing reason the Debtor's *Motion to Reopen* will be granted.

"Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code." *In re Cont'l Airlines*, 203 F.3d 203, 211 (3d Cir. 2000). "However, Section 105(a) has a limited scope. It does not 'create substantive rights that would otherwise be unavailable under the Bankruptcy Code.'" *Id., quoting, United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir.1992). *Section 105(a)* provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

*11 U.S.C. §105(a)*.

The testimony of the Debtor regarding the near instantaneous action taken by AmeriCredit to collect the arrears, ignore the existence and terms of the Reaffirmation Agreement, ultimately repossess the vehicle, and then mislead the Debtor into believing he could

recover the vehicle after the repossession, is indicative of a creditor lying-in-wait. It is disturbing to the Court that in collecting the alleged debt, AmeriCredit would deny the existence of the Reaffirmation Agreement entered into with the Debtor and then, when told of it, refuse to comply with its terms. This unrebutted conduct, as testified to by the Debtor, creates appropriate grounds for the Court to exercise its inherent power to "to prevent an abuse of the process."

A Creditor, such as AmeriCredit, who voluntarily enters into a reaffirmation agreement with a Debtor and then, once the bankruptcy is closed, denies the existence of any such agreement, creating an entirely new set of rules concerning collection of the debt as if no such agreement exists, exercises conduct that cannot be condoned by this Court. This Court reviews scores of reaffirmation agreements each month. The practical ramification of this Court permitting creditors to disregard the obligations created by these reaffirmation agreements, post-bankruptcy, would create chaos for those debtors trying to experience the fresh start that their discharge is intended to provide.

Pursuant to *11 U.S.C. § 524(c)(4)* a debtor may rescind a reaffirmation agreement "at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later." *11 U.S.C. § 524(c)(4)*. As noted above, in the present case the Debtor received his discharge on March 13, 2012. The instant Reaffirmation Agreement was filed on January 9, 2012. Sixty days after the filing date of the Reaffirmation Agreement would have been March 9, 2012. Therefore, the Debtor's discharge date was the later of the two occurrences. As noted above, within a mere 14 days after the Debtor received his discharge (even less if delay due to mailing is considered) he filed his request to rescind the Reaffirmation Agreement. While the facts and circumstances specific to this case do not fall within the literal

9

terms of *Section 524(c)(4)*, the Court finds that its equitable powers under *Section 105(a)* are implicated requiring remedial action.

Decisions by courts interpreting the scope of a debtor's ability to seek rescission of a reaffirmation agreement are almost non-existent, both pre- and post-enactment of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ("BAPCPA"). Case law that does exist on the issue varies and is dependent on the specific facts and circumstances of each case. None of the reported cases have facts which mirror those of this case.[5] Regardless, and what is certain, a Court may take any action, or make any determination necessary or appropriate, to enforce or implement its orders, or rules affecting process within it to prevent an abuse of process. *See 11 U.S.C. §105*.

Here the Debtor's uncontroverted testimony is that representatives from AmeriCredit denied the existence of the Reaffirmation Agreement and then implemented actions not contemplated by the existing credit agreement to repossess Debtor's vehicle. The notion that a creditor can make an agreement with debtors during the pendency of a bankruptcy case, presumably in good faith, then simply deny the existence of any such agreement after the discharge order is granted by refusing to follow the obligations assumed by it in the agreement, and then create a whole new set of requirements in enforcing the obligation referenced in the reaffirmation agreement, is unacceptable to this Court. If, in this case, AmeriCredit and/or its successor wish to act as if no reaffirmation agreement ever existed, this Court has little hesitation

---

[5] *See generally, In re Morton*, 410 B.R.556 (6th Cir.BAP Ohio) (tolled time for debtor to rescind reaffirmation agreement where the bankruptcy court, *sua sponte*, without notice and hearing, denied approval of the agreement as not in the best interest of the debtor); *In re Booth*, 242 B.R. 912 (6th Cir.BAP Ohio) (finding the reaffirmation agreement valid despite a debtor's attempt to timely rescind because the rescission was attempted orally instead of in writing as called for by the agreement); *In re the Matter of Leitner*, 221 B.R. 502 (Bankr. D.Neb. 1998) (debtors were permitted to withdraw their reaffirmation agreement of mortgage where same attorney represented debtors in chapter 7).

in granting what "they wish for" by returning the Parties to a position that would have existed had no reaffirmation agreement ever been entered and direct that the obligation represented by the former Reaffirmation Agreement be subject to the general discharge granted the Debtor.

    An appropriate Order follows.

Dated: August 30, 2012

                              Thomas P. Agresti, Chief Judge
                              United States Bankruptcy Court

Case administrator to serve:
    Debtor
    Tamera Ochs Rothschild, Esq., Ch 7 Trustee
    AmeriCredit Financial Services, Inc., P.O. Box 183853, Arlington, TX 76096
    GM Financial, P.O. Box 182963, Arlington, TX 76096
    AmeriCredit/GM Financial, Operations (Bankruptcy, Loss Mitigation and Collections)
                Attn: Accounts Payable, P.O.Box 1630, Fort Worth, TX 76101-1630